*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ANTHONY RICHARD ONTIVEROZ,

       Defendant-Appellant.

UNPUBLISHED
November 9, 2021

No. 351277
Saginaw Circuit Court
LC No. 18-045776-FC

Before: SWARTZLE, P.J., and SAWYER and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right from his convictions, following a jury trial, of second-degree murder, MCL 750.317, possession of a firearm when committing a felony (felony-firearm), MCL 750.227b, and third-degree fleeing and eluding a police officer, MCL 257.602a(3)(b).[1] The trial court sentenced defendant as a third habitual offender, MCL 769.11, to 38 to 60 years' imprisonment for the murder conviction, 2 to 10 years' imprisonment for the fleeing-and-eluding conviction, and two years' imprisonment for the felony-firearm conviction.

On appeal, appellate counsel argues that defendant's trial counsel provided ineffective assistance by failing to call an expert witness on trauma reactions to explain defendant's attempt to conceal his role in the subject homicide, and that prosecutorial error denied defendant a fair trial. Defendant, in his Standard 4 brief, argues that defense counsel was ineffective for failing to pursue an alibi defense, and that the evidence was insufficient to sustain his convictions. We affirm.

## I. BACKGROUND FACTS

This case arose following the shooting death of 26-year-old Deviontae Banks on September 12, 2018. Banks arrived at the house of his friend, Izack Campbell, after giving Campbell a ride to an appointment with Campbell's probation officer. Thereafter, Campbell walked down the

---

[1] The jury acquitted defendant of carrying a weapon with unlawful intent, MCL 750.226.

street to the mini mart around the corner to buy a Gatorade. As Campbell walked back to the home where he was staying, he passed Banks, who was also walking to the mini mart. Banks and Campbell conversed briefly before going their separate ways. Once Campbell reached the house and sat down to drink his refreshment, he heard three popping sounds. About thirty seconds later, Banks stumbled into the doorway, stating: "[T]hey shot me."

Campbell attempted to move Banks into his car to take him to the hospital, but Banks collapsed and became unresponsive. Campbell then called 911 and Banks was transported to the hospital, where he soon died from his injuries.

An autopsy revealed Banks was shot three times, in the chest, through the right forearm just below the elbow, and at the tip of his right index finger. A toxicology report showed the presence of benzodiazepine, oxycodone, Promethazine, and marijuana in Banks's blood.

After the shooting, defendant went to his cousin's house. Defendant gave his cousin three shell casings, which the cousin flushed down the toilet.[2] Defendant also told his cousin that he "fucked up" and might have "killed Banks." Another person living in the home also heard defendant say that he "fucked up." Defendant left his cousin's house.

Later that afternoon, defendant encountered Kyle Kosciuszko at the mall. Two days before the shooting, Kosciuszko had rented a car for defendant and defendant paid him $50 or $100. Kosciuszko believed that he rented the car because defendant did not have a license. The day before the murder, however, Kosciuszko exchanged the first rental car for a blue Malibu.

During their mall encounter, defendant stated "[s]omething like I can't just be out here like this. If I told you [what] I did, you'd call Crime Stoppers on me or something." Kosciuszko thought defendant was joking, as they often did.

After leaving the mall, defendant drove to a hotel room rented by his cousin and spent the night there. Subsequent analysis of defendant's cell phone data confirmed he was in the area of the crime scene before moving to the areas of his cousin's home, the mall, and the hotel. Defendant also made or received over fifty calls between 1 and 2 p.m., and over one hundred calls between 2 and 4 p.m., on the day of the shooting.

The day after the shooting, the Saginaw Police Department and the United States Marshall Service were searching for the blue Malibu. Because the car was a rental vehicle, the police were able to track its location. A Saginaw police officer spotted defendant in the blue Malibu and activated his police cruiser's lights and siren in an attempt to stop defendant. Instead of stopping, defendant drove through a neighborhood, where the speed limit was 25 miles per hour, at speeds of 60 to 70 miles per hour. Later, the Malibu was found in a parking lot and defendant had fled on foot.

---

[2] Defendant's cousin testified after receiving immunity from prosecution as an accessory after the fact.

A police dog attempted to track defendant, but was unsuccessful in finding him. The dog nevertheless found defendant's hat, which the police officer had observed defendant wearing. Subsequent DNA analysis determined that defendant likely matched the DNA profile from the hat.

About two hours after the car chase, defendant was observed walking into his grandmother's house. After police arrived, defendant eventually surrendered.

At trial, defendant admitted shooting Banks, but testified that he had acted in self-defense. According to defendant, he was parked on the street in front of the mini-mart when Banks came up to the rented Malibu's passenger window. Banks had his right arm on top of the car and was leaning and looking into the car. Defendant could not see Banks's left hand. Banks then asked defendant, "What do you got for me," which defendant understood to mean that Banks was robbing him again.[3] Defendant took some money out of his pocket and threw it toward Banks, but Banks demanded more.

According to defendant, Banks was aggressive and "angsty," and defendant could tell that Banks was high. Defendant also testified that Banks was "clenching" a black and silver gun in the waistband of his pants. Banks pulled the gun out but did not point it at defendant. Defendant testified that he knew that he was being robbed again and that Banks was going to kill him. So defendant "took the only action [he] could to save [his] life." Defendant grabbed his gun that was between the driver's seat and the center console and shot toward the passenger window. After the shooting, defendant started the car and drove away without calling 911.

At trial, however, Campbell testified that he did not see Banks with a gun. And the subsequent police investigation did not locate a gun.

The jury convicted defendant. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel failed to provide effective assistance of counsel because he did not call an expert witness to explain and contextualize his post-shooting behavior. Further, trial counsel failed to call an expert witness to testify about how the drugs in Banks's system affected his behavior. In defendant's Standard 4 brief, he argues that trial counsel was ineffective for failing to investigate and call an alibi witness and the person identified as the driver of the vehicle that the police chased. We disagree.

---

[3] Defendant explained that in 2015 he was supposed to buy marijuana from Banks. Instead, Banks held a gun to defendant's head and yelled at defendant "to cough it up." Defendant gave Banks everything that he had. Defendant testified that, after the robbery, he would see Banks in the neighborhood, but there were no further problems or altercations between the two.

Defendant's cousin testified that he had heard on the streets, not from defendant, that Banks had robbed defendant at gunpoint and had taken a gun from defendant. Defendant's cousin also told the police that that matter "had been squashed."

Appellate counsel moved this Court to remand for a *Ginther*[4] hearing to develop the claims of ineffective assistance of counsel, which this Court denied. *People v Ontiveroz*, unpublished order of the Court of Appeals, entered March 4, 2021 (Docket No. 351277). Accordingly, our review is limited to counsel's errors apparent on the existing record. *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008). The constitutional question whether an attorney provided ineffective assistance, depriving a defendant of the right to counsel, is reviewed de novo. *Id.* at 242.

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This "right to counsel encompasses the right to the 'effective' assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). A counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id.*

## A. EXPERT WITNESS

Defendant argues that trial counsel's performance was deficient because he should have obtained an expert that would counter the prosecutor's argument that defendant's post-shooting behavior was evidence of guilt. Defendant asserts that an expert could have testified that defendant's post-shooting behaviors "were normal human responses to a traumatic event, particularly for a person only 20 years of age with a prior traumatic experience with Mr. Banks and several negative encounters with police." Appellate counsel argues that it would have been helpful to defendant's claim of self-defense if he could have demonstrated that his post-shooting evasion of the police was a reaction to trauma, as an alternative to attributing it to a consciousness of guilt. "[A] defendant is not entitled to offer evidence of a lack of mental capacity for the purpose of avoiding or reducing criminal responsibility by negating the intent element," but a defendant may, when relevant, "present evidence that he or she is afflicted with a mental disorder or otherwise has limited mental capabilities." *People v Yost*, 278 Mich App 341, 354-360; 749 NW2d 753 (2008).

The failure to call witnesses can constitute ineffective assistance of counsel. See *People v Jurewicz*, 506 Mich 914; 948 NW2d 448 (2020). However, it is defendant's burden to make a record supporting his claim that " 'excludes hypotheses consistent with the view that his trial lawyer represented him adequately.' " *People v Mitchell*, 454 Mich 145, 163; 560 NW2d 600 (1997), quoting *People v Ginther*, 390 Mich 442-443; 212 NW2d 922 (1973). In this case, defendant has not submitted any offer of proof that an expert existed who would testify that fleeing the shooting, disposing of evidence, sleeping away from home, eluding a traffic stop by driving

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

with excessive speed, and barricading oneself in a relative's home before surrendering, then initially giving the police false information, could be considered a normal reaction to a traumatic situation. Further, even if such an expert was produced, it is not apparent that the trial court would have determined that expert testimony about the effects of trauma on a young man's mind would be relevant to assist the jury in understanding the evidence. See *People v Parcha*, 227 Mich App 236, 239-240; 575 NW2d 316 (1997) (stating that expert testimony is admissible when the testimony assists the finder of fact in understanding or determining a fact at issue).

Further, trial counsel's decision whether to call an expert witness is presumed to be a matter of effective trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). It is possible that defendant's trial attorney did not wish to call another witness to discuss defendant's post-shooting behavior because highlighting defendant's flight and hiding from police and destruction of evidence could focus the jurors on these actions and lead them to conclude that defendant's post-shooting actions were the result of a consciousness of guilt rather than concluding they were individually and in combination a normal reaction to the trauma of being involved in a shooting. Choosing not to highlight or emphasize unfavorable testimony can be reasonable trial strategy. *People v Bosca*, 310 Mich App 1, 37; 871 NW2d 307 (2015).

Moreover, defense counsel, through defendant's testimony and closing argument, was able to have the jury consider that defendant was too panicked, afraid, and unable to think clearly to report a shooting in self-defense and so reacted by concealing his actions. Because there was testimony that defendant's actions after the shooting resulted from trauma, not guilt, there is not a reasonable probability that expert testimony to the same effect would have resulted in a different outcome at trial. For these reasons, appellate counsel has not demonstrated that defense counsel's performance was deficient for not calling an expert in trauma reactions.

Appellate counsel also argues that defendant's trial counsel should have consulted an expert to testify about the effects of the drugs found in Banks's system in order to support defendant's account of having had to shoot him in self-defense. But in many instances it is not necessary to retain an expert witness because cross-examination may suffice to attack the testimony of opposition witnesses. *Harrington v Richter*, 562 US 86, 111; 131 S Ct 770; 178 L Ed 2d 624 (2011).

In this case, defense counsel cross-examined the medical examiner, who revealed that Banks had four drugs in his blood of a sort prone to abuse. And not only did the medical examiner testify that Banks had drugs in his system, but defendant also testified that Banks "wasn't acting normally," was "very aggressive," was "kind of acting antsy" and was "high." Thus, defendant's trial counsel presented the jury with evidence that defendant's actions were compelled, in part, as a reaction to what he perceived as Banks's troubling demeanor.

Further, assuming that an expert could have further elaborated on the drugs in Banks's system, defendant has not submitted any offer of proof regarding the proposed testimony that such an expert might have provided. The medical examiner testified that he did not know whether Banks was prescribed any of the substances in his system, or whether medical personnel administered any of them, but stated that the levels of the drugs "appear[ed] to be within . . . a prescribed [low dose] range." There was no evidence submitted that another expert would contradict the medical examiner's testimony that he did not know if Banks's had abused the drugs,

or when or whether they were present at levels that might have influenced Banks's behavior toward defendant. In any event, defendant testified that Banks was angsty, aggressive, and high. Further testimony detailing the effects of the drugs on Banks would not have affected the outcome of trial. For these reasons, appellate counsel has not demonstrated that defense counsel's performance was deficient by not consulting an expert about the substances found in Banks's blood.

## B. ALIBI WITNESSES

Defendant, in his Standard 4 brief, argues that trial counsel failed to investigate two witnesses who could have testified that defendant was a passenger with one of them in a vehicle owned by the other at the time it was alleged that defendant was driving another car that sped away from an attempted police stop. Defendant states that one of those potential witnesses attempted to contact defense counsel, and also asserts that a police report named another person as the driver of the vehicle that fled and eluded the police.

Defense counsel's duty is to prepare, investigate, and present all possible defenses. *People v Shahideh*, 277 Mich App 111, 118; 743 NW2d 233 (2007). Failure to do so can constitute ineffective assistance of counsel. *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). Counsel's decisions regarding how much investigation to undertake must be on the basis of "reasonable professional judgments." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004).

In this case, defendant testified at trial that, the day after the shooting, he disregarded several attempts by the police to pull him over by driving away very fast in a residential area. On direct examination, defendant specifically agreed that he did "knowingly flee and elude[] the police." Defendant's theory of the case was that he shot Banks in self-defense. And further, that defendant was an immature 20-year-old who did not know about the law of self-defense, which is why he fled from the police. Defendant cannot now complain about trial counsel's failed trial strategy. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). Accordingly, any claim that defendant's trial counsel failed to pursue an alibi defense for the fleeing-and-eluding charge cannot succeed because defendant testified under oath that he actually engaged in the activity underlying that charge. See *People v Leonard*, 224 Mich App 569, 592-593; 569 NW2d 663 (1997).

## III. PROSECUTORIAL ERROR

Defendant argues that comments the prosecutor made in closing and rebuttal arguments regarding defendant's theory of self-defense denied him a fair trial.[5] We disagree.

---

[5] "[A]lthough the term prosecutorial misconduct has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are better and more fairly presented as claims of prosecutorial error, with only the most extreme cases rising to the level of prosecutorial misconduct." *People v Jackson*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (quotation marks and citation omitted).

Trial counsel did not object at trial to the comments defendant now challenges. An unpreserved claim of prosecutorial error is reviewed for plan error affecting substantial rights. *People v Norfleet*, 317 Mich App 649, 660 n 5; 897 NW2d 195 (2016). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

The prosecutor has a duty to ensure that the defendant receives a fair trial. *People v Bahoda*, 448 Mich 261, 266-267 & n 6; 531 NW2d 659 (1995). The responsibility of a prosecutor is to seek justice, rather than merely to convict. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "[T]he test for prosecutorial [error] is whether a defendant was denied a fair and impartial trial." *Id.* "[A] fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Id.* at 63-64. A prosecutor's remarks are evaluated in context and in relation to the evidence admitted at trial. *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005).

In this case, defendant argues that the prosecutor erred in her closing argument by positing that defendant could not legally assert that he acted in self-defense. The prosecutor summarized defendant's version of the facts, and commented as follows:

> Even if you believe that completely unrealistic story, there's a bigger problem. The defense is putting on a lawful self-defense in this case. The problems [sic] with that is that in order in Michigan to be acting in lawful self-defense, you yourself cannot be currently engaged in the commission of a crime. [Defendant] sat here, told everybody, I didn't have a license, I was running around in that rental car, and I had a weapon concealed in that car. Technically he shouldn't be allowed to say he acted in self-defense.

"A prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial." *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). This includes argument inconsistent with the Self-Defense Act, MCL 780.971 *et seq*. See *People v Adamowicz*, 503 Mich 880, ___; 918 NW2d 532, 532-533 (2018). We note, however, that the Self-Defense Act sets forth the privilege with an important qualification: "An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat . . . ." MCL 780.972(1). But the challenged statement was not in accord with the facts of the case as presented because it was not argued or established that defendant was committing a crime while sitting in his parked car when Banks approached him.

Nevertheless, a prosecutor's misstatement of the law can be cured when the trial court properly instructs the jury on the law. *Grayer*, 252 Mich App at 357. See also *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004) (stating that a trial court's "instruction was sufficient to eliminate any prejudice that might have resulted from the prosecutor's remarks."). In this case, the trial court instructed the jury that "[t]he lawyers' statement and arguments are not evidence" and that it must decide the case "based only on the evidence and my instructions on the law." The trial court continued, "You must take the law as I give it to you. If a lawyer says something different about the law, follow what I say." The trial court then properly instructed the

jury regarding defendant's self-defense claim. "Jurors are presumed to follow instructions, and instructions are presumed to cure most errors." *People v Petri*, 279 Mich App 407, 414; 760 NW2d 882 (2008). See also *Grayer*, 252 Mich App at 357.

Although the prosecutor commented on an aspect of the viability of defendant's theory of self-defense that was not argued during trial, the trial court corrected this misstatement by properly instructing the jury on the law of self-defense as it was argued at trial. Therefore, the prosecution's misstatement of the law did not prejudice defendant or deny him of a fair trial.[6] See *People v Mosko*, 441 Mich 496, 503; 495 NW2d 534 (1992) (a criminal defendant is entitled to a fair trial, not necessarily a perfect one). And because defendant has not established that he was prejudiced by the alleged error, or that the alleged error was outcome-determinative, the claim that counsel was ineffective for failing to object also fails because there is not a reasonable probability that an objection would have resulted in a different outcome, given that the trial court properly instructed the jury. See *Taylor*, 275 Mich App at 186; *Jordan*, 275 Mich App at 667.

Defendant also argues that the prosecutor erred when revisiting the issue of self-defense during her rebuttal argument:

> The next thing and last thing I want to tell you all, is that [defense counsel] is making this about [defendant] didn't have [sic] any other option, and it's kind of similar to what he's facing now, if you look at this objectively. He has no other option at this point. He's backed into a corner at this point. And the only thing that he can do is present some sort of [H]ail Mary defense of yes, I was there, and I did it, but this is why I did it. The only thing I'm asking you to do, look at it objectively. Ask yourself if that makes sense. And if he has a motive to get on the stand and lie about something he did solely to get out of this charge.

Appellate counsel asserts that this challenge to the truthfulness of defendant's account of having resorted to self-defense denigrated the defense and violated his right to present a defense. A prosecutor may not disparage the defendant's exercise of his constitutional right to present a defense. *People v Sterling*, 154 Mich App 223, 232; 397 NW2d 182 (1986). Moreover, the prosecutor may not question the veracity of defendant's trial counsel, *People v Kennebrew*, 220 Mich App 601, 607; 560 NW2d 354 (1996), or suggest that defense counsel is intentionally

---

[6] Defendant notes that the trial court did not include further language from *People v Townes*, 391 Mich 578, 592; 218 NW2d 136 (1974), that the "[a]ppellant may only be held legally accountable as an aggressor for responsive conduct by another that is reasonably attributable to appellant's own conduct." Defendant contends that this addition would have clarified for the jury that criminal behavior by a defendant that was unlikely to lead to the other person's assaultive behavior would not interfere with a defendant's eligibility to pursue a self-defense theory. Initially, we note that defendant does not separately argue that the trial court committed instructional error, MCR 7.212(C)(5). And, in fact, defense counsel waived any error when he stated that he had no objection to the trial court's instructions below. See *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011). Regardless, defendant cannot establish that counsel's failure to seek further clarification constituted deficient performance or prejudiced him for the reasons we have already discussed.

attempting to mislead the jury, *Unger*, 278 Mich App at 236. Such arguments are prohibited because they undermine the defendant's presumption of innocence. *People v Wise*, 134 Mich App 82, 102; 351 NW2d 255 (1984).

However, prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence. *Thomas*, 260 Mich App at 454. Prosecutors have "great latitude regarding their arguments," and are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236. In this case, the prosecutor was endeavoring to rebut defendant's argument that he had no choice but to shoot in self-defense. "Where a defendant testifies at trial or advances, either explicitly or implicitly, an alternate theory of the case that, if true, would exonerate the defendant, comment on the validity of the alternate theory cannot be said to shift the burden of proving innocence to the defendant." *People v Fields*, 450 Mich 94, 115; 538 NW2d 356 (1995). Although the prosecutor did attack the theory of defense as a "Hail Mary" and asserted that defendant had a motive to fabricate his theory of self-defense, "the prosecutor is not prohibited from commenting on the improbability of the defendant's theory or evidence," *id*. at 116, nor did the prosecutor have to frame her argument "in the blandest possible terms," *Unger*, 278 Mich App at 239. Accordingly, the prosecution did not undermine defendant's presumption of innocence, nor did the argument deny defendant a fair trial.

## IV. INSUFFICIENT EVIDENCE

Defendant, in his Standard 4 brief, challenges the sufficiency of the evidence to sustain his convictions. We disagree.

We review de novo challenges to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010).

Due process requires that every element of a crime be proved beyond a reasonable doubt for a criminal conviction. *People v Oros*, 502 Mich 229, 204 & n 3; 917 NW2d 559 (2018). In reviewing whether the prosecutor produced evidence sufficient to sustain a conviction, a reviewing court considers "the evidence in the light most favorable to the prosecutor" to determine " 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010), quoting *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn, are considered to determine whether the evidence was sufficient to sustain the conviction. *Oros*, 502 Mich at 240.

## A. SECOND-DEGREE MURDER

To obtain a valid conviction of second-degree murder,[7] the prosecution must prove beyond a reasonable doubt "(1) a death, (2) the death was caused by an act of the defendant, (3) the

---

[7] We note that defendant's Standard 4 brief uses the elements of first-degree premeditated murder, MCL 750.316(1)(a), in his argument, despite being charged with open murder, see MCL 767.71, and being convicted of second-degree murder.

defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007), citing *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). A defendant acts with malice when acting with " 'the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.' " *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002), quoting *Goecke*, 457 Mich at 464.

Defendant argues that "this case has no weapons, no shell casings, no witnesses who are credible, and no intent or motive presented as evidence." But defendant testified that he killed Banks by shooting him multiple times, before he drove to his cousin's residence to discard the bullet casings and gun. Defendant's cousin confirmed that defendant gave him the casings to dispose of, and testified that defendant told him that he "messed up" and might have "killed Banks." Additionally, the intent to kill may be inferred from the use of a deadly weapon. *People v McMullan*, 284 Mich App 149, 153; 771 NW2d 810 (2009). A jury may also infer malice from evidence the defendant "intentionally set in motion a force likely to cause death or great bodily harm." *People v Stiller*, 242 Mich App 38, 43; 617 NW2d 697 (2000). Defendant admitted at trial that he intentionally shot Banks multiple times, and the medical examiner testified that Banks died from the gunshots. Accordingly, the jury could properly infer malice from defendant's purposeful use of a gun to shoot Banks.

Defendant also argues that there "was no evidence offered during the trial that showed the defendant did not believe that the force used wasn't necessary to protect himself." "[O]nce the defendant injects the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of proof to exclude the possibility that the killing was done in self-defense . . . ." *People v Dupree*, 486 Mich App 693, 709-710; 788 NW2d 399 (2010) (quotation marks and citation omitted). MCL 780.972 provides the elements for a claim of self-defense:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.
>
> (b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual.
>
> (2) An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the

use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

Defendant testified that Banks appeared to be impaired by drug use, and was aggressive in demanding money during their encounter, and also that he thought that Banks would shoot him because he was clenching a gun in his waist band, and that those indications of danger compelled him to shoot Banks. Defendant also testified about an incident years before where Banks robbed defendant at gun point.[8] Thus, defendant presented evidence and argument from which the jury could have concluded that defendant shot in self-defense. See *Dupree*, 486 Mich at 709-710 (stating that the defendant must provide evidence to satisfy the elements of self-defense).

Conversely, the prosecution adduced evidence that countered defendant's assertion of self-defense. There was no gun found on or near Banks, and Campbell testified that he did not see Banks with a gun before the shooting. After the shooting, defendant fled the scene without calling 911. Defendant drove to his cousin's house, where the shell casings were flushed down the toilet, and defendant admitted to shooting Banks. Defendant then spent the night at a hotel, and when spotted by police the next day, fled at high speeds through a neighborhood before ditching the car and escaping on foot. Finally, defendant was apprehended at his grandmother's house after barricading himself inside while police waited outside for two hours. This evidence, argued the prosecutor, evidenced that defendant did not shoot Banks in self-defense, but instead, showed that defendant murdered Banks.

The jury observed defendant's testimony, and an appellate court "does not interfere" with the fact-finder's "assessment of the weight and credibility of witnesses or the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). The trier of fact also determines "the weight to be accorded [to] any inferences." *Id*. When deciding a sufficiency challenge, "a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Gonzalez*, 468 Mich 636, 640-641; 664 NW2d 159 (2003). For these reasons, we conclude that there was sufficient evidence from which a rational juror could have found beyond a reasonable doubt that defendant's repeatedly shooting at Banks was not in self-defense.

## B. FLEEING AND ELUDING

In challenging his conviction of fleeing and eluding the police, defendant argues that he was not identified as the driver of the vehicle in question. But, as already discussed, defendant himself testified that he was driving when he intentionally sped away from the police, and a police officer testified that he recognized that defendant was the driver of the vehicle when he was present as defendant was taken into custody about two hours later. Moreover, the hat that defendant was wearing during the car chase was found near the area where the car had been abandoned and DNA

---

[8] In his Standard 4 brief, defendant states that Banks had assaulted him on a yearly basis, and that Banks was a violent person, but these new factual assertions are not part of the record, and are also contrary to the testimony of defendant, Kosciuszko, and defendant's cousin.

recovered from the hat suggested that it was in fact defendant's hat. Therefore, the evidence was sufficient to sustain defendant's conviction of fleeing and eluding the police.

Affirmed.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Anica Letica